UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ASAD U. KHAQAN,                          )
                                         )
          Plaintiff,                     )
                                         )
          v.                             )          1:23-cv-00162-JAW
                                         )
TOWN OF BUCKSPORT, et al.,               )
                                         )
          Defendants.                    )

**ORDER ON MOTION TO DISMISS**

A plaintiff alleges the defendants deprived him of his civil rights and his freedom to operate a business; intentionally and tortiously interfered with his ability to enter contractual relations; subjected him to bullying, intimidation, and harassment; and did so intentionally and with malice, thereby making both compensatory and punitive damages appropriate. Defendants—a town, its code enforcement officer, and all seven town council members—move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim and to dismiss any remaining claims as to the town because no municipal liability may attach. The Court grants the motion as to six of the claims either because they fail to state a cause of action or because the allegations are too vague or conclusory to state a claim for relief. The Court denies the motion on three claims because the plaintiff has alleged sufficient facts to show that he is plausibly entitled to relief.

## I.   FACTUAL AND PROCEDURAL HISTORY[1]

The town of Bucksport is a Maine town incorporated under the laws of Maine and sits in Hancock County.  *Compl.* ¶¶ 1-2 (ECF No. 1) (*Compl.*).  Bucksport's Code Enforcement Officer is Luke Chiavelli and its Town Councilmembers are Peter L. Stewart, Paul A. Bissonette, Edward A. Rankin, Jr., Mark B. Eastman, Steven M. Bishop, James R. Morrison and Daniel M. Ormsby.[2]  *Id.* ¶¶ 3-4.

On March 30, 2018, Asad U. Khaqan, a resident of Maine, purchased a property located at 196 U.S. Route 1 in Bucksport, Maine, which included the Fountain Inn, a motel business/establishment.  *Id.* ¶¶ 1, 6.  When Mr. Khaqan purchased the property, an entire wing of the Fountain Inn had recently been rebuilt with insurance money and, as part of the rebuild, was subject to review by multiple governmental agencies, all of which provided approval.  *Id.* ¶ 7.

Mr. Chiavelli, unhappy with consistent statements from the State Fire Marshal's Office that they were happy with the progress Mr. Khaqan was making at the Fountain Inn, took it upon himself, in his capacity as Bucksport's Code Enforcement Officer, to do everything within his power to shut down the Fountain Inn and he continues to do so to this day.  *Id.* ¶¶ 8-9.  Taking matters into his own

---

[1]      The Court recites the facts alleged in Mr. Khaqan's complaint, accepting all well-pleaded facts as true and drawing all reasonable inferences in his favor.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[2]      Mr. Khaqan's complaint refers to the "Town Selectmen of the Town of Bucksport." *Compl.* ¶ 4.  In their motion to dismiss, the Defendants state that Bucksport "has a Town Council and not a select board." *Defs.' Mot. to Dismiss* at 1, n.1 (ECF No. 15).  In his reply, Mr. Khaqan does not respond to the Defendants' assertion and instead simply continues to refer to the Defendants as "Town Selectm[e]n". *Answer and Opp'n to the Defs.' Mot. to Dismiss* at 2 (ECF No. 19).  The exact form of municipal government is not critical to the resolution of this case, but the Court has assumed that the town knows its own form of government and has opted to use town council or councilman, not board of selectman or selectmen.

hands, Mr. Chiavelli demonstrated a refusal and/or inability to cooperatively work with Mr. Khaqan. *Id.* ¶¶ 9-10. He has provided Mr. Khaqan with instructions regarding necessary remedial actions, only to assert those very actions support finding the Fountain Inn constitutes a dangerous building. *Id.* ¶ 10. Mr. Chiavelli has also provided conflicting instructions regarding fixes he requires for Mr. Khaqan's property and has demonstrated an unwillingness to work with him. *Id.* ¶ 19.

After a letter in July 2020 stated that an inspection was needed that summer, Mr. Chiavelli has aggressively pursued inspections and alleged violations against Mr. Khaqan, despite not following up on inspections of similarly situated businesses. *Id.* ¶ 11. In advance of a Dangerous Buildings Hearing, Mr. Chiavelli made statements to public newspapers that even if Mr. Khaqan's appeal of the Town Council's determination that the Fountain Inn was a dangerous building was successful, he would go back and condemn the building again. *Id.* ¶ 12. Mr. Chiavelli also presented photographs to the Town Council that failed to display numerous remedial measures carried out by Mr. Khaqan. *Id.* ¶ 13.

The Town Council did not provide Mr. Khaqan an opportunity to review the evidence presented by Mr. Chiavelli, including the pictures he submitted to the Town Council, and it refused to permit Mr. Khaqan to cross-examine and directly challenge or question Mr. Chiavelli. *Id.* ¶ 14. Following the Town Council's decision to deem Mr. Khaqan's establishment a dangerous building,[3] Mr. Chiavelli interfered with

---

[3] In his complaint, Mr. Khaqan never specifies what the decision was. In the context of the allegations, the Court, given the totality of the facts, assumes this is the decision Mr. Khaqan is

funding Mr. Khaqan received to house individuals at the Fountain Inn from January through March of 2021, thus interfering with Mr. Khaqan's ability to fund any needed repairs and improvements to the property. *Id.* ¶ 15.

Mr. Chiavelli has also confronted, attempted to intimidate, turned away, and/or instructed workers hired by Mr. Khaqan to clean the Fountain Inn and better prepare it for any needed repairs and improvements that they lacked necessary protective gear/equipment. *Id.* ¶¶ 16, 20. Additionally, Mr. Chiavelli has made false public statements about an alleged lack of progress at the Fountain Inn despite having been in touch with Mr. Khaqan's contractor about work to be completed. *Id.* ¶ 17. Mr. Chiavelli has also made false statements that no work has been done to repair the property and has made efforts to persuade Mr. Khaqan and his contractor that things would go better if they sold their property to a buyer Mr. Chiavelli had lined up.[4] *Id.* ¶ 21.

---

referring to. *But see Pl.'s Opp'n* at 7 ("The Decision, as outlined in the Complaint, are the cumulative actions of the Town's CEO and the Town and its Select Board to shut down the Plaintiff's business with no evidence that the Plaintiff has committed any offense or broke any law").

[4]    The entirety of alleged fact 22 reads: "The false and misleading statements, the discriminatory and disparate treatment, the constant harassment, and intentional interference with contractual relations all of which continue to this day has caused the Plaintiff to lose hundreds of thousands of dollars, if not more, in revenues and profits." *Compl.* ¶ 22.

The First Circuit has instructed that "*Ocasio–Hernández* points the way to the proper handling of a motion to dismiss. Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (citing *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir. 2011)).

Mr. Khaqan's statements referencing "the discriminatory and disparate treatment, the constant harassment, and intentional interference with contractual relations," *Compl.* ¶ 22, are "legal labels and conclusions" so the Court must "isolate and ignore" them.

What remains are allegations of "false and misleading statements" and of damages totaling "hundreds of thousands of dollars," both of which are included in the Court's factual recounting, even though they are more rhetorical than factual.

Further, Mr. Chiavelli made racist comments to Mr. Khaqan's brother about Mr. Khaqan's ethnicity, including calling him a "snake charmer." *Id.* ¶ 18.  Mr. Khaqan is Asian and ethnically Indian, from the country of India.[5]  *Id.*

Taken together, Mr. Chiavelli's actions have caused Mr. Khaqan to lose hundreds of thousands of dollars, if not more, in revenues and profits.[6, 7, 8, 9]  *Id.* ¶ 22.

---

[5]      Mr. Khaqan writes that he is from the "County of India."  *Compl.* ¶ 18.  This must be a typographical error.  Given the context, combined with the fact that there is no county of India in Maine or anywhere else in the United States, the Court assumes Mr. Khaqan is referring to the country of India.

[6]      The entirety of alleged fact 23 reads:

> Applicants before a municipal agency and members of the public who oppose an application are entitled due process of law under the United States and Maine Constitutions. *Duffy v. Town of Berwick*, 2013 ME 105, ¶ 15, 82 A.3d 148; see U.S. CONST., amend. XIV § 1; ME. CONST., art. I, § 6-A. For adjudicatory hearings, due process generally requires: notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial fact finder. *Jitssaume v. Ducatt*, 2011 ME 43, ¶ 12, 15 A.3d 714. Other than the notice of the issues, none of the requirements of due process were in any meaningful way met in this case.

*Compl.* ¶ 23.

The first two sentences do not allege a fact and instead provide legal citations.  The third sentence offers a legal conclusion so the Court must "isolate and ignore" the statement.  As none of alleged fact 23 provides factual background for the complaint, the Court strikes it in its entirety.  *See Schatz*, 669 F.3d at 55 (citing *Ocasio–Hernández*, 640 F.3d at 12)).

[7]      The entirety of alleged fact 24 reads: "The conduct of the Defendants' shocks the conscience of a decent society. Town selectmen and the Town declared Plaintiff's property 'dangerous' and conspired with the Defendant CEO to ensure the Plaintiff's business was shut down."  *Compl.* ¶ 24.

That the Defendants' conduct "shocks the conscience of a decent society" is a legal conclusion. As is Mr. Khaqan's allegation of a conspiracy.  Accordingly, the Court must "isolate and ignore" both segments of the alleged fact.  *See Schatz*, 669 F.3d at 55 (citing *Ocasio–Hernández*, 640 F.3d at 12)).

What remains is Mr. Khaqan's allegation that "Town selectmen and the Town declared Plaintiff's property 'dangerous.'"  The Court has included this fact in its factual recounting.

[8]      The entirety of alleged fact 25 reads: "The conduct of the Defendants' is part of a pattern or practice of rules and procedure condoned by the Town of Bucksport; and has been condoned by the Town Selectmen."  *Compl.* ¶ 25.

Whether conduct is a pattern or practice of rules and procedure is a legal conclusion so the Court must "isolate and ignore" the statement.  *See Schatz*, 669 F.3d at 55 (citing *Ocasio–Hernández*, 640 F.3d at 12)).  Accordingly, the Court strikes alleged fact 25 in its entirety.

[9]      The entirety of alleged fact 26 reads: "At all relevant times herein the Defendants' were acting under the authority of law."  *Compl.* ¶ 26.

That Defendants "were acting under the authority of law" is a legal conclusion so the Court must "isolate and ignore" the statement.  *See Schatz*, 669 F.3d at 55 (citing *Ocasio–Hernández*, 640 F.3d at 12)).  Accordingly, the Court strikes alleged fact 26 in its entirety.

On April 7, 2023, Mr. Khaqan filed a complaint against the town of Bucksport, Mr. Chiavelli, in his capacity as code enforcement officer, and the seven Bucksport council members (Defendants). *See id.* at 1-7. Therein, Mr. Khaqan asserted claims under the United States and Maine constitutions, the Civil Rights Act (42 U.S.C. § 1983), the Maine Civil Rights Act (5 M.R.S. § 4682), and tort law, and he sought compensatory and punitive damages for his alleged injuries. *Id.* at 4-7.

On July 25, 2023, the Defendants filed a motion to dismiss for failure to state a claim. *Mot. to Dismiss* (ECF No. 15) (*Defs.' Mot.*). On August 24, 2023, Mr. Khaqan responded in opposition. *Response in Opp'n* (ECF No. 19) (*Pl.'s Opp'n*). On August 29, 2023, the Defendants replied. *Reply* (ECF No. 20) (*Defs.' Reply*).

## II.   PARTIES' POSITIONS

### A.   The Defendants' Motion to Dismiss

The Defendants assert that "where both a federal provision or statute and its Maine state equivalent have been invoked, those counts can be addressed together." *Defs.' Mot.* at 3 (quoting *Beaulieu v. City of Lewiston*, 440 A.2d 334, 338 n.4 (Me. 1982); *Northup v. Poling*, 2000 ME 199, ¶ 9 n.5, 761 A.2d 872, 875; *Ms. K v. City of S. Portland*, 407 F. Supp. 2d 290, 298 (D. Me. 2006)).

The Defendants argue the equal protection claims, "Counts I and II should be dismissed for failure to state a claim." *Id.* at 5. To support this position, the Defendants say that Mr. Khaqan does not "allege that Mr. Chiavelli's conduct or that of the Councilmen was motivated or undertaken *because of* Plaintiff's race or ethnicity." *Id.* at 4 (emphasis in original). "Moreover," the Defendants continue, "the

6

complaint fails to allege that any other similarly situated person was treated differently from Plaintiff." *Id.* Next, the Defendants aver "Plaintiff has essentially asserted a 'class of one' equal protection claim." *Id.* Yet, while the "complaint uses the term 'discriminatory and disparate treatment,'" Defendants contend, "nowhere does the complaint describe the nature of such treatment. There is simply no description of another similarly situated person such that a comparison of treatment is possible." *Id.* at 5. Defendants cite *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009), for the proposition that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Defendants next argue that "Counts III and IV [, the due process claims,] do not meet the plausibility standard, [and] they should be dismissed." *Id.* at 6. The Defendants cite *Eldredge v. Town of Falmouth, MA*, 662 F.3d 100, 104 (1st Cir. 2011), to attest that "[w]hile the plausibility standard is not akin to a probability requirement, it demands more than a sheer possibility that a defendant has acted unlawfully. Unless the alleged facts push a claim across the line from conceivable to plausible, the complaint is subject to dismissal." *Id.* at 6. By the Defendants' estimation, facts do not exist to get Mr. Khaqan's due process claims across the line. *See id.* Specifically, they argue that "[w]ithout alleging the specific nature of the proceeding, it is impossible to determine what process was due" and that "[t]he complaint simply does not contain sufficient allegations to determine whether the 'decision,' whatever it was, constituted the exercise of arbitrary government power." *Id.*

7

The Defendants then argue that the civil rights claims, "Counts V, VI, and VIII should be dismissed as well." *Id.* at 8. The Defendants say that these counts "do not specify which of Plaintiff's constitutional rights was violated." *Id.* at 7. They argue that insofar as these counts "are based on alleged equal protection and due process violations," they "should be dismissed for the same reason as Counts I through IV." *Id.* The Defendants then argue that the "only *specific* right mentioned in [Counts V, VI, and VIII] is the right to operate a business." *Id.* (emphasis in original). However, they continue, "[s]everal courts have explained [] that although interference with a business relationship might be a tort, it is not a constitutional violation." *Id.* Altogether, the Defendants argue that Mr. Khaqan's "conclusory statement in Paragraph 47 of the complaint that [his] constitutional rights have been violated is insufficient to withstand a motion to dismiss." *Id.* at 8.

The Defendants then argue that "[a]s a matter of law, Count VII fails to state a claim on which relief can be granted" because "any contractual relationships were prospective." *Id.* The Defendants argue Mr. Khaqan's "bare allegation in Paragraph 47" is uncorroborated as "there is no allegation that Plaintiff had any existing contracts relating to the Fountain Inn with which Defendants interfered." *Id.*

The Defendants also argue that the last count of the complaint, Count IX, which asserts a claim for punitive damages, should be dismissed because absent any other tort "there is no avenue available for an award of punitive damages." *Id.* at 9 (citing *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985); *Pan Am Sys., Inc. v. Hardenbergh,* 871 F. Supp. 2d 6, 18 (D. Me. 2012)).

8

The Defendants further argue that "[i]f the Court does not dismiss the complaint against all Defendants, it nevertheless should grant the motion with respect to claims against the Town." *Id.* They insist Mr. Khaqan has shed no light on the alleged pattern or practice condoned by the town of Bucksport, undermining the validity of all his constitutional claims. *Id.* at 10. The Defendants then say that even if "Mr. Chiavelli and the Councilmen did intentionally interfere with Plaintiff's contractual relations, that conduct, as a matter of law, could not have been of the kind they were employed by the Town to perform. Accordingly, no vicarious liability can attach to the Town." *Id.*

### B.    Asad Khaqan's Opposition

Mr. Khaqan argues he has "articulated substantive and detailed allegations, in terms of any notice pleading requirements." *Pl.'s Opp'n* at 2. Mr. Khaqan once again offers the Court twenty "facts admitted for this proceeding." *Id.*

Turning to the equal protection issue, Mr. Khaqan argues that "Defendants seem to make an effort to at least imply that there is some higher, if not heightened, pleading standard for equal protection cases or any other Section 1983 claim." *Id.* at 4. Mr. Khaqan avers that "[t]he First Circuit, following U.S. Supreme Court decisions have rejected any higher pleading standard for Section 1983 claims." *Id.*

Regarding his due process argument, Mr. Khaqan responds to the Defendants' argument that it is unclear what the "decision" in the complaint was: "The Decision, as outlined in the Complaint, are the cumulative actions of the Town's [Chief Enforcement Officer] and the Town and its Select Board to shut down the Plaintiff's

business with no evidence that the Plaintiff has committed any offense or broken any law." *Id.* at 7. Mr. Khaqan continues and says "[t]hat kind of targeting, prejudice, and animus is inherently an exercise of arbitrary government power." *Id.*

Next, Mr. Khaqan argues that "Defendants make a specious argument that the right to operate a business is not a constitutional right." *Id.* By his estimation, "the term 'life, liberty, or property' in the US and Maine Constitutions should cover this specious argument." *Id.* Mr. Khaqan cites Justice Stevens' solo dissent in *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393, 412 (2003): "For decades federal judges have uniformly given the term 'property' an expansive construction that encompasses the intangible right to exercise exclusive control over the lawful use of business assets. The right to serve customers or to solicit new business is thus a protected property right." *Pl.'s Opp'n.* at 7 (quoting *Scheidler*, 537 U.S. at 412 (8-1 decision) (Stevens, J., dissenting)).

As far as municipal liability, Mr. Khaqan cites caselaw from the Maine Supreme Judicial Court (Law Court) and the U.S. Supreme Court distinguishing municipal liability and immunity from suit, *id.* at 7-8, before asserting that he "has clearly alleged a municipal policy, practice, or procedure to deny [his] constitutional rights." *Id.* at 8.

Mr. Khaqan concludes that "Defendants' Motion to Dismiss should itself be dismissed and that his matter should move forward." *Id.*

### C.    The Defendants' Reply

The Defendants take issue with Mr. Khaqan citing a Maine state case for the standard to be used in deciding a motion to dismiss; they argue that "[a]lthough the language of [Maine Rule of Civil Procedure] 8(a) does not differ significantly from the language in [Federal Rule of Civil Procedure] 8(a), this Court must of course look to the federal rule and federal cases . . .." *Defs.' Reply* at 1.  A key difference, the Defendants point out, is that a federal claimant's complaint must "set forth a claim for relief that is plausible on its face, a standard the Law Court has not yet adopted." *Id.* at 2 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Next, the Defendants argue that "roughly two and a half pages of the Opposition (pp.2-4), consist of a verbatim recitation of the allegations in Paragraphs 7 through 26 of the Complaint.  It is unnecessary to address that repetition." *Id.*

Turning to Mr. Khaqan's response on the equal protection argument, the Defendants argue that both cases Mr. Khaqan cites "were decided before the Supreme Court's decisions in *Twombly* and *Iqbal*, and [they] in no way eliminate the requirement of [*Twombly* and *Iqbal*] that a complaint must set forth a claim to relief that is plausible on its face." *Id.* at 2-3.  Further, the Defendants continue, "[g]laringly absent from Plaintiff's equal protection argument is any mention of how any conduct by Defendants had a discriminatory effect or was motivated by a discriminatory purpose." *Id.* at 3.

11

The Defendants say Mr. Khaqan's opposition has "no argument addressing Count VII (Intentional Interference with Contract Relations) or Count IX (Punitive Damages)." *Id.*

Turning to the due process claim, the Defendants say "Plaintiff alludes to 'The Decision, as outlined in the Complaint,' but Defendants explained . . . that the Complaint does not set forth what 'the Decision' was." *Id.* (quoting *Pl.'s Opp'n* at 7). Therefore, the Defendants argue "the Court is left to speculate as to what conduct amounted to 'the exercise of arbitrary governmental power.'" *Id.* (quoting *Duffy v. Town of Berwick*, 2013 ME 105, ¶ 15, 82 A.3d 148, 155).

Turning to the civil rights claims, the Defendants argue that "Plaintiff's citation of *Scheidler* [] is wholly inapposite" because:

> *Scheidler* was a class action case brought under the Racketeer Influenced and Corrupt Organizations Act (RICO) relating the petitioners' efforts to shut down abortion clinics. Not only does Plaintiff cite to the opinion of the lone dissenter in the case, Justice Stevens, *Scheidler* addressed the extent to which the petitioners interfered with and obtained 'property' as that term is defined in the Hobbs Act, 18 U.S.C. § 1951. *Scheidler* at most held that the abortion clinics' doctors' right to perform their jobs and the clinics' right to conduct their business was 'property' under the Hobbs Act. *Scheidler* was not a civil rights case and therefore had no occasion to determine whether the right to operate a business was constitutionally protected.

*Id.*

Regarding the municipal liability issue, the Defendants contend "Plaintiff has merely made a conclusory allegation . . . [that t]he Court need not accept as true." *Id.* at 4.

The Defendants conclude by saying that "Plaintiff's Opposition adds very little if anything to justify denying Defendants' Motion." *Id.* Therefore, they "respectfully

request that this Court dismiss Plaintiff's Complaint pursuant to [Federal Rule of Civil Procedure] 12(b)(6)." *Id.*

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure Rule 8(a) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). According to the United States Supreme Court, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)).

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the 'legal sufficiency' of a complaint." *Gideon Asen LLC v. Glessner*, 583 F. Supp. 3d 242, 246 (D. Me. 2022) (quoting *Me. Educ. Ass'n Benefits Tr. v. Cioppa*, 842 F. Supp. 2d 373, 376 (D. Me. 2012) (quoting *Gomes v. Univ. of Me. Sys.*, 304 F. Supp. 2d 117, 120 (D. Me. 2004))).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "sufficient facts to show that he has a plausible entitlement to relief." *Sanchez*, 590 F.3d at 41 (citing *Iqbal*, 556 U.S. at 678). Deciding a motion to dismiss under Rule 12(b)(6) is a two-step analysis. *Schatz*, 669 F.3d at 55. First, a court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions

or merely rehash cause-of-action elements." *Id.* Second, a court must "take the complaint's well-pled . . . facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id.* "'If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,' dismissal is proper." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)).

## IV.  DISCUSSION

To recap, Mr. Khaqan brings the following claims: 1) Count I, violation of the Equal Protection Clause of the United States Constitution; 2) Count II, violation of the Equal Protection Clause of the Maine Constitution; 3) Count III, violation of the Due Process Clause of the United States Constitution; 4) Count IV, violation of the Due Process Clause of the Maine Constitution; 5) Count V, violation of his federal civil rights under 42 U.S.C. § 1983; 6) Count VI, violation of his civil rights under the Maine Civil Rights Act; 7) Count VII, intentional interference with contractual relations; 8) Count VIII, harassment in violation of the Maine Civil Rights Act; and 9) Count IX, punitive damages.

The Court grants the Defendants' motion to dismiss as to six of Mr. Khaqan's claims: Counts I and II, the Equal Protection Clause violations; Counts III and IV, the Due Process Clause violations; Count VIII, harassment contravening the Maine Civil Rights Act; and Count IX, punitive damages. The Court denies the Defendants' motion to dismiss as to three of Mr. Khaqan's claims: Count V, violation of his federal

14

civil rights under 42 U.S.C. § 1983; Counts VI, violation of his civil rights under the Maine Civil Rights Act; and Count VII, intentional interference with contractual relations.

**A.    Alleged Violations of the Equal Protection Clause of the United States and Maine Constitutions (Counts I and II)**

Mr. Khaqan alleges that "Defendants have violated [his] rights under the U.S. Constitution to the equal protection of the laws." *Compl.* ¶ 28.  He similarly alleges that "Defendants' conduct has violat[ed his rights] under the Constitution of the State of Maine." *Compl.* ¶ 31.  As the "protections of the federal and Maine equal protection clauses are coextensive," the Court analyzes the equal protection claims together. *Beaulieu v. City of Lewiston*, 440 A.2d 334, 338 n.4 (Me. 1982).  As relief for the alleged violations, Mr. Khaqan "asks this Honorable Court to enter judgment in his favor and to award the Plaintiff all damages allowed by law." *Compl.* at 4-5.

Typically, when a plaintiff brings a constitutional claim in the District of Maine, the plaintiff seeks relief under 42 U.S.C. § 1983 and/or its state of Maine counterpart, 5 M.R.S. § 4682.  In fact, in his complaint in Counts V and VI, Mr. Khaqan does just that. *Compl.* ¶¶ 39-42.  By contrast, in Counts I and II, Mr. Khaqan is alleging a right to bring stand-alone constitutional claims untethered to any state or federal enabling statute.  Later, the Court analyzes Mr. Khaqan's right to bring claims under the federal and state civil rights statutes, but in addressing Counts I and II, the Court must first determine whether the law allows Mr. Khaqan to file suit merely alleging constitutional violations without attempting to bring those claims under an enabling statute.  The Court concludes the law does not allow stand-alone

15

constitutional claims untethered to an enabling statute and, therefore, dismisses Counts I and II of the complaint.

The First Circuit's recent decision, *Quinones-Pimentel v. Cannon*, 85 F.4th 63 (1st Cir. 2023), provides helpful background. In *Quinones-Pimentel*, the First Circuit observed that "[o]ur Constitution does not expressly provide for money damages for constitutional wrongs." *Id.* at 69 (citing *In re Fin. Oversight & Mgmt. Bd.*, 41 F.4th 29, 44-45 (1st Cir. 2022)). Conceding that in 1871, Congress enacted 42 U.S.C. § 1983 to provide money damages against state actors who violate the Constitution, the First Circuit observed that Congress "has never enacted a similar statute against federal actors." *Id.*

As *Quinones-Pimentel* wrote, "*Bivens* then entered the scene in 1971." *Id.* In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396-97 (1971), the United States Supreme Court held that a petitioner could bring a damages claim under the Fourth Amendment because such a remedy could be judicially implied under the Constitution. Then, in 1979, in *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court extended *Bivens* to Fifth Amendment due process claims for sex-based discrimination, and in *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court further extended *Bivens* to Eighth Amendment deliberate indifference claims.

However, after *Carlson*, the "Supreme Court has charted a significantly different path, consistently refusing 'to extend the *Bivens* doctrine to new settings.'" *Quinones-Pimentel*, 85 F.4th at 69 (quoting *González v. Vélez*, 864 F.3d 45, 50 (1st

Cir. 2017)). The *Quinones-Pimentel* court performed a thorough analysis as to whether *Bivens* should be extended to the allegations in that case and concluded it should not because the case involved a new context and special factors counseled against extending *Bivens*. *Id.* at 69-75. Significantly, Mr. Khaqan cites no case where *Bivens* has been extended to Fourteenth Amendment claims.

Here, Mr. Khaqan is not attempting to sue federal employees, but rather municipal employees or agents. Nevertheless, the Court concludes that the same logic that underpins *Bivens* would apply with equal force for both United States and Maine constitutional claims brought independently instead of under the federal and state civil rights acts. "[T]he Supreme Court has cautioned that 'recognizing a cause of action under *Bivens* is a disfavored judicial activity,' and 'even a single sound reason to defer to Congress[] is enough to require a court to refrain from creating such a remedy.'" *Aaron v. City of Lowell*, 666 F. Supp. 3d 102, 128 (D. Mass. 2023) (cleaned up) (quoting *Egbert v. Boule*, 596 U.S. 482, 491 (2022)). "If there are alternative remedial structures in place, 'that alone,' . . . is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 137 (2017)).

Here, alternative remedial structures are in place and are cited in Mr. Khaqan's complaint: 42 U.S.C. § 1983 and 5 M.R.S. § 4682. Therefore, insofar as Mr. Khaqan is requesting that this Court extend a *Bivens*-like remedy to a Fourteenth Amendment claim against a municipality and its employees and agents, the Court declines. Instead, like the Defendants, the Court will "treat the alleged violations of

17

Plaintiff's constitutional rights . . . as though they were properly asserted under §
1983 and the [Maine Civil Rights Act]." *Defs.' Mot.* at 2.  Thus, even though the Court
concludes that Mr. Khaqan may not proceed with Counts I and II, this does not mean
that he is without remedy.  Instead, the Court turns to whether he has properly stated
his claims under 42 U.S.C. § 1983 and 5 M.R.S. § 4682.

In sum, because the Court concludes that Mr. Khaqan may not bring a stand-
alone Equal Protection claim untethered to a federal or state enabling statute, the
Court grants Defendants' motion to dismiss as to Count I (Violation of the Equal
Protection Clause of the United States Constitution) and Count II (Violation of the
Equal Protection Clause of the Maine Constitution) for failure to state a claim.

## B.   Alleged Violations of the Due Process Clause of the United States and Mane Constitutions (Counts III and IV)

Mr. Khaqan also alleges that the Defendants' conduct violated his due process
rights "pursuant to the Fourteenth Amendment of the U.S. Constitution" and
"pursuant to the Maine Constitution." *Compl.* ¶¶ 34, 37.  As the "protections of the
federal and Maine due process requirements are also coextensive," the Court analyzes
these due process claims together.  *Northup v. Poling*, 2000 ME 1999, ¶ 9 n.5, 761
A.2d 872.

As relief for the alleged violations, Mr. Khaqan "asks this Honorable Court to
enter judgment in his favor and to award the Plaintiff all damages allowed by law."
*Compl.* at 5.  However, as indicated in the previous section, the Supreme Court has
not recognized an implied cause of action for the Fourteenth Amendment.  Here, as
alternative remedial structures, 42 U.S.C. § 1983 and 5 M.R.S. § 4682, are in place,

18

the Court will "treat the alleged violations of Plaintiff's constitutional rights . . . as though they were properly asserted under § 1983 and the [Maine Civil Rights Act]." *Defs.' Mot.* at 2.

The Court accordingly grants the Defendants' motion to dismiss as to Counts III (Violation of the Due Process Clause of the U.S. Constitution) and IV (Violation of the Due Process Clause of the Maine Constitution).

### C.   Alleged Civil Rights Violations of 42 U.S.C. § 1983 and 5 M.R.S. § 4682 (Counts V and VI)

42 U.S.C. § 1983 provides a civil cause of action against any person who, under color of state law, custom, or usage, subjects another to deprivation of any rights, privileges, or immunities secured by the Federal Constitution and laws.  The Maine Civil Rights Act, 5 M.R.S. §§ 4681-85, patterned after 42 U.S.C. § 1983, provides a private cause of action for violations of constitutional rights under the Federal or Maine Constitutions, by any person, "whether or not acting under color of law."  5 M.R.S. § 4682.

Mr. Khaqan's complaint alleges violations of his rights to equal protection and due process.  *Compl.* ¶¶ 28, 31, 34, 37.  As 42 U.S.C. § 1983 provides a cause of action for these alleged deprivations, the Court will analyze whether Mr. Khaqan has alleged sufficient facts to support a claim.  Mr. Khaqan also alleges that Defendants' conduct has deprived him "of his civil rights and his freedom to operate a business." *Compl.* ¶¶ 40, 42.  As Mr. Khaqan alleges this under § 1983, the Court understands it to be a constitutional claim and analyzes it as such.

### 1.   Violations of the Equal Protection Clause of the United States and Maine Constitutions

Mr. Khaqan alleges that "Defendants have violated [his] rights under the U.S. Constitution to the equal protection of the laws." *Compl.* ¶ 28.  He similarly alleges that "Defendants' conduct has violat[ed his rights] under the Constitution of the State of Maine." *Compl.* ¶ 31.  As the "protections of the federal and Maine equal protection clauses are coextensive," the Court analyzes the equal protection claims together. *Beaulieu v. City of Lewiston*, 440 A.2d 334, 338 n.4 (Me. 1982).

"To establish an equal protection claim, a plaintiff needs to allege facts showing that (1) the person, compared with others similarly situated, was selectively treated, and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Davis v. Coakley*, 802 F.3d 128, 132-33 (1st Cir. 2015).

Mr. Khaqan alleges that "[t]he [Code Enforcement Officer of Bucksport] has aggressively pursued inspections and alleged violations against [him], while not even following up on inspections of similarly situated businesses." *Compl.* ¶ 11.  In his response to the Defendants' motion, Mr. Khaqan further says "Defendants seem to make an effort to at least imply that there is some higher, if not heightened, pleading standard for equal protection cases." *Pl.'s Opp'n* at 4.  Mr. Khaqan then includes a long block quotation from *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir. 2004).  *See id.* at 4-6.

Mr. Khaqan is correct that *Hernandez* overturned First Circuit precedent requiring a heightened pleading standard for federal civil rights actions generally, except where the statute or specific civil procedure required the result.   *See Hernandez*, 367 F.3d at 66-67.  However, the *Hernandez* court made clear that "[a]ll civil rights actions are subject to Rule 8(a)'s notice pleading regime."   *Id.* at 67. Therefore, the Defendants are correct that Mr. Khaqan "is simply incorrect that *Hernandez* sets forth a less rigorous pleading standard than *Twombly* and *Iqbal*." *Defs.' Reply* at 3; *see also Hernandez*, 367 F.3d at 68 ("[I]n considering motions to dismiss courts should continue to 'eschew any reliance on bald assertions, unsupportable conclusion, or opprobrious epithets'" (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987))).

Mr. Khaqan alleges that "[t]he [Code Enforcement Officer of Bucksport] has aggressively pursued inspections and alleged violations against [him], while not even following up on inspections of similarly situated businesses."  *Compl.* ¶ 11.  This is the only allusion in Mr. Khaqan's complaint to others who are similarly situated, and it is not enough for his equal protection claims to survive.  This allegation is "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture."  *Alston*, 988 F.3d at 571.  Mr. Khaqan's complaint is devoid of any facts that indicate who the other businesses were, what the other businesses were involved in, or how their circumstances made them similarly situated.  As the Defendants point out, "[t]here is simply no description of another similarly situated person such that a comparison of treatment is possible."  *Defs.' Mot.* at 5.  While the Court

21

"assume[s] the truth of all well-pleaded facts and give[s] the plaintiff the benefit of all reasonable inferences therefrom," it does not "credit bald assertions [or] empty conclusions." *Guilfoile v. Shields*, 913 F.3d 178, 186 (1st Cir. 2019) (alterations in original) (quoting *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008); and *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 348 (1st Cir. 2018)).

While there is no heightened pleading standard for § 1983 claims, Mr. Khaqan's evidence is not enough even under Rule 8's pleading requirement. *See* FED. R. CIV. P. 8. Without any putative comparators having been put forth, the Court concludes Mr. Khaqan's allegations concerning the first element of the Equal Protection Clause amount to a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (cleaned up); *see Harron v. Town of Franklin*, 660 F.3d 531, 537 (1st Cir. 2011) ("At minimum . . . Harron had to identify his putative comparators and put forth some facts showing the existence of malice or some other impermissible consideration").

Mr. Khaqan's Equal Protection Clause claim, while invoking a recognized right, fails because it is too vague and conclusory. Therefore, insofar as Mr. Khaqan's § 1983 claim is based on the constitutional right to equal protection, it also fails.

### 2. Freedom to Operate a Business as a Property Right

Mr. Khaqan also alleges that the Defendants' conduct deprived him of "his freedom to operate a business." *Compl.* ¶¶ 40, 42. The Defendants argue that "although interference with a business relationship might be a tort, it is not a

22

constitutional violation." *Defs.' Mot.* at 7 (citing *Balt. Air Transp., Inc. v. Jackson*, 419 F. App'x 932, 937 (11th Cir. 2011); *Apothecary Dev. Corp. v. City of Marco Island Florida*, 995 F. Supp. 2d 1341, 1347 (M.D. Fla. 2014); and *Carias v. Harrison*, Nos. 5:13-CT-3264-FL, 5:14-CT-3104-FL, 2017 U.S. Dist. LEXIS 43917, at *18 (E.D.N.C. Mar. 27, 2017)). Given that "[n]o other right is specifically cited in Counts V and VI" and that "the complaint contains the conclusory allegation that Plaintiff's 'civil rights' have been violated," the Defendants argue these claims are no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [and] do not suffice." *Id.* at 7-8 (quoting *Iqbal*, 556 U.S. at 678). In his opposition, Mr. Khaqan does not precisely address these arguments; instead, Mr. Khaqan's response seems to be limited to his argument that the right to operate a business is in fact a constitutional right. *Pl.'s Opp'n* at 7.

Contrary to Mr. Khaqan's position, courts have not recognized the right to run a business as a property interest that would activate due process guarantees.[10] *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) ("The assets of a business (including its good will) unquestionably are property, and any state taking of those assets is unquestionably a 'deprivation' under the Fourteenth Amendment . . . business in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense"). Because the only "right" Mr. Khaqan specifies is one not recognized by courts, it is not enough to

---

[10]     In support of the proposition that there is a constitutional right to operate a business, Mr. Khaqan cites Justice Stevens' dissent in *Scheidler*, 537 U.S. at 412. Mr. Khaqan cites no further authority for this proposition, and the Court is aware of none. Of course, a single Justice's unjoined dissenting opinion does not create a precedent binding on this Court.

support his § 1983 claim as he has failed "to state a claim upon which relief can be granted." Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6).

### 3. Violations of the Due Process Clause of the United States and Mane Constitutions

Mr. Khaqan also alleges that the Defendants' conduct violated his due process rights "pursuant to the Fourteenth Amendment of the U.S. Constitution" and "pursuant to the Maine Constitution." *Compl.* ¶¶ 34, 37. As the "protections of the federal and Maine due process requirements are also coextensive," the Court analyzes these due process claims together. *Northup v. Poling*, 2000 ME 1999, ¶ 9 n.5, 761 A.2d 872.

Due process protections are both substantive and procedural. Substantive due process "functions to protect individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions." *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006); *accord Daniels v. Williams*, 474 U.S. 327, 331 (1986). Procedural due process guarantees that "before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Replay, Inc. v. Sec'y of Treas. of P.R.*, 778 F. Supp. 2d 207, 216 (D.P.R. 2011) (quoting *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990)); *accord Calderon–Garnier v. Rodriguez*, 578 F.3d 33, 38 (1st Cir. 2009) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976)).

24

It is unclear whether Mr. Khaqan is making a substantive due process claim, a procedural due process claim, or both. However, as he may be alleging both, the Court reviews the complaint to see if there are sufficient allegations to support either theory. *Cf. United States v. Severino-Pacheco*, 911 F.3d 14, 19 (1st Cir. 2018) ("It is unclear from his brief to what extent he is raising a claim of substantive as well as procedural error; however, it appears that he argues that his ultimate sentence was substantively unreasonable as the result of procedural mistakes"); *Frazier v. Bailey*, 957 F.2d 920, 929 (1st Cir. 1992) ("Though it is unclear from the face of the complaint, Frazier appears to allege that his substantive due process rights were violated"); *Ocean State Tactical, LLC v. Rhode Island*, 646 F. Supp. 3d 368, 398 (D.R.I. 2022) ("It is unclear to the Court upon which theory of due process the plaintiffs are proceeding, although presumably it is substantive due process").

### a.   Substantive Due Process

To assert a valid substantive due process claim, plaintiffs "have to prove that they suffered the deprivation of an established life, liberty, or property interest, *and* that such deprivation occurred through governmental action that shocks the conscience." *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008) (emphasis in original).

While Mr. Khaqan's complaint does not specify what life, liberty, or property interest he believes the town of Bucksport was depriving him of, his opposition to the Defendants' motion suggests that Mr. Khaqan believes the town of Bucksport has unconstitutionally limited his ability to run a business. *Pl.'s Opp'n* at 7. Specifically, quoting Justice Stevens' dissenting opinion in *Scheidler*, Mr. Khaqan argues that

"Defendants make a specious argument that the right to operate a business is not a constitutional right." *Id.*

However, as the Court has discussed, courts have not recognized the right to run a business as a constitutional right. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) ("The assets of a business (including its good will) unquestionably are property, and any state taking of those assets is unquestionably a 'deprivation' under the Fourteenth Amendment . . . *business in the sense of the activity of doing business*, or the activity of making a profit *is not property in the ordinary sense*" (emphasis supplied)).

Although the taking of business assets is an infringement on the constitutional right to property, Mr. Khaqan's facts do not allege there was a taking of his business assets. The closest Mr. Khaqan gets to alleging a taking is saying that the Defendants' actions have "caused [him] to lose hundreds of thousands of dollars, if not more, in revenues and profits." *Compl.* ¶ 22. But lost profits do not amount to a taking. *S. Terminal Corp. v. EPA*, 504 F.2d 646, 679 (1st Cir. 1974) ("[E]ven a diminution of profits or a requirement that some loss be suffered is not enough, when all other accoutrements of ownership remain, to be a 'taking'"). "[A] permanent physical occupation of property authorized by a government is a taking. So, too, is a regulation that permanently requires a property owner to sacrifice all economically beneficial uses of his or her land." *Ark. Game and Fish Com'n v. United States*, 568 U.S. 23, 31-32 (2012). Mr. Khaqan has not alleged that the Defendants permanently occupied his property, nor has he alleged that they deprived his hotel of all

26

economically beneficial use; he therefore cannot succeed on a claim that there was a taking of his business assets. *See Britton v. Keller*, 851 F. App'x 821, 826 (10th Cir. 2021).

In summary, Mr. Khaqan has not alleged that the Defendants deprived him of any recognized life, liberty, or property right.[11]  Having failed to establish that any fundamental right was infringed upon, Mr. Khaqan has made no colorable substantive due process claim to underpin his § 1983 claim.

### b.   Procedural Due Process

"To state a valid procedural due process claim, a plaintiff must (1) 'identify a protected liberty or property interest,' and (2) 'allege that the defendants . . . deprived [him] of that interest without constitutionally adequate process.'" *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 34 (1st Cir. 2011) (alterations in original) (quoting *González–Droz v. González–Colón*, 660 F.3d 1, 13 (1st Cir. 2011)).

While the right to run a business has not been recognized as a property interest that would activate due process guarantees, "[t]here is a line of cases where the Courts have recognized business licenses, privileges, certificates and franchises as property interests for purposes of procedural due process analysis, since once issued

---

[11]   Mr. Khaqan alleges that "[t]he conduct of Defendants' shocks the conscience of a decent society." *Compl.* ¶ 24.  First, as explained above, this is a legal conclusion, not a factual allegation, therefore the Court must ignore it.  *See supra* n.7.  Second, while this allegation, particularly in the context of racist remarks, seems very serious on its face, the Court need not address this second prong of the substantive due process analysis as the claim cannot continue without the first prong being satisfied, namely an allegation that a fundamental right was deprived being plausibly alleged.  *See Redondo–Borges v. U.S. Dep't of Hous. & Urban Dev.*, 421 F.3d 1, 11 (1st Cir. 2005) ("Because the plaintiffs identify no constitutionally protected property interest, it is unnecessary to delve any deeper into the section 1983 inquiry").

they 'may become essential in the pursuit of a livelihood.'" *Am. Cruise Ferries, Inc. v. Vazquez Garced*, CV 20-1633 (DRD), 2020 U.S. Dist. LEXIS 246065, at *11 (D.P.R. Dec. 17, 2020) (quoting *Bell v. Burson*, 402 U.S. 535, 539 (1971)).

Mr. Khaqan's allegation that he has been deprived of the right to operate his business, *Compl.* ¶¶ 40, 42, at the very least implies that some business license or privilege has been revoked limiting the pursuit of his livelihood.   Drawing all reasonable inferences for Mr. Khaqan, *see Schatz*, 669 F.3d at 55, the Court concludes that he has alleged sufficient facts to plausibly support a finding that the Defendants have deprived him of a property right.  *Cf. Twombly*, 550 U.S. at 563 ("[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint").

As far as the second prong, a lack of constitutionally adequate process, Mr. Khaqan alleges that the "Town selectmen and the Town declared Plaintiff's property 'dangerous.'" *Compl.* ¶ 24.  The Defendants point out that Mr. Khaqan's "complaint hints that there was a proceeding, presumably before the Town Council, in the form of a 'Dangerous Buildings Hearing,' but the specific procedure of that hearing is not explained." *Defs.' Mot.* at 5.  Defendants go on to say that the "complaint sheds no further light on what decision ensued." *Id.*  Without knowing the decision or the specific nature of the proceeding, the Defendants argue "it is impossible to determine what process was due Plaintiff." *Id.* at 6.  Therefore, they continue, "[t]he complaint simply does not contain sufficient allegations to determine whether the 'decision,' whatever it was, constituted the exercise of arbitrary government power." *Id.*

28

While Mr. Khaqan's alleged facts are sparse at best, "the pleading standard Rule 8 announces does not require detailed factual allegations." *Iqbal*, 556 U.S. at 678. Instead, the pleading standard merely "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Here, taking Mr. Khaqan's well-pleaded facts as true and drawing all reasonable inferences in his favor, his factual allegations "plausibly narrate a claim for relief." *Schatz*, 669 F.3d at 55. Beyond naming that there was a dangerous buildings hearing and that the Town Council and the Town declared his property as dangerous, Mr. Khaqan also names elements of procedure that occurred or failed to occur, which seem to underpin his claim that there was not due process: "[t]he photographs the [Code Enforcement Officer] presented to the Town Council failed to display numerous remedial measures carried out by Plaintiff," and the "Town Council did not provide Plaintiff an opportunity to review the evidence presented by the [Code Enforcement Officer]—including the pictures . . . and refused to permit the Plaintiff to cross-examine and directly challenge or question the [Code Enforcement Officer]." *Compl.* ¶¶ 12-14. Given these facts, Mr. Khaqan's factual allegations move from "meager, vague, or conclusory" to enough to move the possibility of relief from conjecture to actually "plausible." *See Alston*, 988 F.3d at 571.

To be clear, many crucial details are left unalleged. "[T]o determine whether a procedural due process violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative

procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Zinermon v. Burch,* 494 U.S. 113, 126 (1990).  Both parties aptly cite *Duffy v. Town of Berwick*, 2013 ME 105, 82 A.3d 148, which makes clear that:

> When governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account.

*Id.* ¶ 16 (quoting *Hannah v. Larche*, 363 U.S. 420, 442 (1960)).  This language demonstrates how fact-intensive and detailed an inquiry into procedural due process can be.  This is particularly true here as the Town Council declared the building dangerous, suggesting something akin to judicial adjudication.  To require a party to include all these details in the complaint would extend the *Iqbal* pleading requirements.  *See Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations").  The Court declines to do so and concludes Mr. Khaqan has identified a property interest and alleged sufficient facts that he was deprived of that interest without constitutionally adequate process.[12]

---

[12]     Insofar as Mr. Khaqan's § 1983 claim is separate from his references to his freedom to operate a business, the Equal Protection Clause, or the Due Process Clause, it fails, but for a different reason.

        Federal Rule of Civil Procedure 8(d)(1) requires that the allegations within a pleading "be simple, concise, and direct."   "The fundamental purpose of our pleadings rules is to protect a defendant's inalienable right to know in advance the nature of the cause of action being asserted against him." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal marks omitted).

Therefore, the Court denies Defendants' motion to dismiss as to Count V (Violation of the Federal Civil Rights of the Plaintiff under 42 U.S.C. § 1983) and Count VI (Violation of the Civil Rights of Plaintiff under 5 M.R.S. § 4682).

### D. Alleged Intentional Interference with Contractual Relations (Count VII)

Mr. Khaqan alleges that "Defendants deliberately and collectively, in concert with each other, sought to interfere with [his] right to operate a business, to obtain workers and to invite guests to rent rooms." *Compl.* ¶ 44.

The Defendants respond that "any contractual relationships were prospective and not existing." *Defs.' Mot.* at 8. But, the Defendants maintain, "[t]he relationship that is interfered with must be 'existing.'" *Id.* (quoting *St. Hillaire v. Berta*, 588 A.2d 309, 310 (Me. 1991)). Therefore, they contend that "[a]s a matter of law, Count VII fails to state a claim on which relief can be granted, and it should be dismissed." *Defs.' Mot.* at 8.

"Tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) the existence of a valid contract *or prospective economic advantage*; (2) interference by the defendant with the contract or advantage by means of fraud or intimidation; and (3) resulting damages." *Allstate Ins. Co. v. Chretien*, No. 1:12-CV-38-DBH, 2013 U.S. Dist. LEXIS 175458, at *33-34 (D. Me. Nov. 5, 2013),

---

Mr. Khaqan's complaint fails to meet this minimal burden because he did not indicate what other civil right or rights he alleges were infringed. *See Rios-Campbell v. U.S. Dep't of Com.*, 927 F.3d 21, 25 (1st Cir. 2019) (noting that the plausibility standard "is intended to screen out claims in which the factual allegations of the complaint are too scanty or too vague to render the claims plausible"). This renders his complaint too vague to be plausible or to give the Defendants notice of the cause of action being asserted with sufficient particularly.

*aff'd* 2013 U.S. Dist. LEXIS 175457 (D. Me. Dec. 12, 2013) (emphasis added) (citing *Currie v. Indus. Sec., Inc.,* 915 A.2d 400, 408 (Me. 2007)); *accord Landsberg v. Me. Coast Reg'l Health Facilities*, 640 F. Supp.2d 108, 113 (D. Me. 2009) (quoting *Sherbert v. Remmel,* 2006 ME 116, ¶ 4 n. 3, 908 A.2d 622, 623)); *Petit v. Key Bank of Me.*, 688 A.2d 427, 430 (Me. 1996) (quoting *Barnes v. Zappia,* 658 A.2d 1086, 1090 (Me.1995)).

### 1.   Existence of a Valid Contract or Prospective Economic Advantage

While Mr. Khaqan does not specifically allege the existence of a valid contract, he does allege prospective economic advantage sufficient to meet the first element of tortious interference.

Specifically, Mr. Khaqan alleges that Mr. Chiavelli, the Code Enforcement Officer for the town of Bucksport, "has confronted, attempted to intimidate, and turned away workers hired by [Mr. Khaqan] to clean the Fountain Inn and better prepare it for any needed repairs and improvements"; has "provided conflicting instructions regarding fixes he requires for Property"; "has interfered with efforts to repair the Motel by turning away workers and/or instructing them that they lacked necessary protective gear/equipment"; and "interfered with funding [Mr. Khaqan] received for housing individuals at the Fountain Inn." *Compl.* ¶¶ 15, 16, 19, 20.

These allegations indicate Mr. Khaqan believes the Defendants impeded workers hired by Mr. Khaqan from working on his property, the Fountain Inn. This work would presumably have increased the capacity and value of the Fountain Inn, thereby giving Mr. Khaqan better capability to compete in the hospitality market. Additionally, from the alleged facts, it is at least plausible that additional factual

development could demonstrate that Mr. Chiavelli interfered with valid contracts between Mr. Khaqan and workers, and in turn with Mr. Khaqan and prospective guests.  Further, Mr. Khaqan has alleged that Mr. Chiavelli limited his ability to garner funds he had already received in exchange for the promise to house individuals on his property, thereby limiting his prospective economic advantage.

### 2.  Interference by Means of Fraud or Intimidation

With the first element having been satisfied sufficiently to survive a motion to dismiss, the Court turns to the second: interference by the defendant with the contract or advantage by means of fraud or intimidation.  Mr. Khaqan does not specify which theory he is advancing, so the Court analyzes whether the alleged facts plausibly support a claim of relief under either theory.

"Where the plaintiff alleges that the defendant interfered by fraud, the plaintiff must establish the elements of fraud." *Landsberg*, 640 F. Supp. 2d at 113.  The elements of fraud are: (1) "a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff." *Id.* (quoting *Sherbert*, 2006 Me 116, ¶ 4 n.3, 908 A.2d 622, 623); *accord Chretien*, 2013 U.S. Dist. LEXIS 175458, at *36; *Petit*, 688 A.2d at 430; *Grover v. Minette–Mills, Inc.,* 638 A.2d 712, 716 (Me. 1994).

If a plaintiff alleges interference by intimidation, he must show "unlawful coercion or extortion." *Landsberg*, 640 F. Supp. 2d at 113 (quoting *Rutland v. Mullen,*

2002 ME 98, ¶ 16, 798 A.2d 1004, 1111).  "Intimidation can be demonstrated not only with a showing of conduct designed to frighten a person for coercive purposes, but also with conduct designed to procure a breach of contract by making it clear to another that the only manner in which the other could obtain the benefit of working with the defendant would be to break off a relationship with the plaintiff."  *Chretien*, 2013 U.S. Dist. LEXIS 175458, at *38 (citing *Currie,* 915 A.2d at 408).

Mr. Khaqan's allegations plausibly allege that Mr. Chiavelli, Bucksport's Code Enforcement Officer, interfered by fraud.  Mr. Khaqan alleges that "[t]he photographs the CEO presented to the Town Council failed to display numerous remedial measures carried out by [Mr. Khaqan]."  *Compl.* ¶ 13.  Mr. Khaqan also alleges that Mr. Chiavelli "has made false statements that no work has been done to repair the Property" and "has made efforts to persuade [Mr. Khaqan and his] contractor that things would go better if they sold their property to a buyer [Mr. Chiavelli] had lined up."  *Id.* ¶ 21.  In other words, Mr. Khaqan alleges multiple false representations of material fact, satisfying the first two elements of fraud.  He implies Mr. Chiavelli, who repeatedly visited the Fountain Inn property, had knowledge of the falsity, satisfying the third element.  Mr. Khaqan alleges that Mr. Chiavelli attempted to mislead the Town Council and his contractor, satisfying the fourth element.  Mr. Khaqan also alleges that Mr. Chiavelli's representations were relied and acted upon by the Town Council leading to the decision of his building being deemed dangerous, thereby satisfying the fifth and final element of fraud.  *See id.* ¶¶ 12-14, 24.

As Mr. Khaqan has alleged sufficient facts for a claim of interference by means of fraud to be plausible, the Court declines to reach whether he also has alleged sufficient facts for a claim of interference by intimidation; one of the alternate routes to meeting the second element of tortious interference with a prospective economic advantage is sufficient.

### 3. Resulting Damages

With the first two elements satisfied, the Court turns to the third and final element: resulting damages. Mr. Khaqan alleges that the Defendants' actions "have caused grievous injury to [him] and has caused [him] to lose hundreds of thousands of dollars, if not more, in revenues and profits." *Compl.* ¶ 45. This allegation satisfies the third element.

The Court concludes Mr. Khaqan has plausibly alleged all the elements of tortious interference with prospective economic advantage and the Court accordingly denies Defendants' motion to dismiss as to Count VII (Intentional Interference with Contractual Relations).

### E. Alleged Harassment Contravening the Maine Civil Rights Act (Count VIII)

In Count VIII, Mr. Khaqan claims "Defendants have repeatedly subjected [him] to bullying, intimidation and harassment throughout the above referenced events; all of which are violations of [his] constitutional rights and violative of the Maine Civil Rights Act." *Compl.* ¶ 47.

The Defendants contend that "the conclusory statement in Paragraph 47 of the complaint that Plaintiff's constitutional rights have been violated is insufficient to

withstand a motion to dismiss" for the "same reason" as the other civil rights claims, Counts V and VI. *Defs.' Mot.* at 8. That reason, as discussed above, is twofold: 1) that the "right to operate a business is not a right protected by the constitution," and 2) "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Mr. Khaqan's response on the issue seems to be limited to his contention that "Defendants make a specious argument that the right to operate a business is not a constitutional right." *Pl.'s Opp'n* at 7. The Court does not retread its analysis on whether operating a business is a constitutionally protected right; it is not. *See Coll. Sav. Bank*, 527 U.S. at 675. Instead, the Court turns to the Maine Civil Rights Act.

The Maine Civil Rights Act, in its entirety, is found in 5 M.R.S. §§ 4681-85. Nowhere within these statutes is there a reference to "bullying, intimidation [or] harassment." *Compl.* ¶ 47; *see* 5 M.R.S. §§ 4681-85. Even so, as will be seen, the general allegation of "bullying, intimidation and harassment" could fit within the statute's prohibition against threatening physical force or violence against a person, threatening damage or destruction of property or trespass on property, and engaging in conduct that would cause a reasonable person to suffer emotional distress or to fear death or bodily injury. 5 M.R.S. § 4682(1-A)(B)(3-5). Regardless, even after taking "the complaint's well-pled . . . facts as true, [and] drawing all reasonable inferences in the pleader's favor," as the Court must, Mr. Khaqan has not "plausibly narrate[d] a claim for relief." *Schatz*, 669 F.3d at 55.

Section 4681 allows the Attorney General to bring suit when any person, whether acting under color of law or not, interferes with someone's constitutional rights. 5 M.R.S. § 4681. As this action was brought by Mr. Khaqan, not the Attorney General, this section is inapplicable.

Section 4682 creates a civil cause of action for aggrieved persons and is applicable as Mr. Khaqan alleges to be aggrieved. 5 M.R.S. § 4682. Section 4682(1-A) creates two avenues for suit to be brought. *See id.* The first is if someone violates section 4684-B. *Id.* § 4682(1-A)(A).

Section 4684-B(1) offers definitions. Section 4684-B(2) names several actions that would a violation of the subsection:

> A. Engaging in the physical obstruction of a building;
> B. Making or causing repeated telephone calls to a person or a building, whether or not conversation ensues, with the intent to impede access to a person's or building's telephone lines or otherwise disrupt a person's or building's activities;
> **C.** Activating a device or exposing a substance that releases noxious and offensive odors within a building; or
> **D.** During the posted hours of operating after having been ordered by a law enforcement officer to cease such noise, at any time after the order, intentionally making noise that can be heard within a building and with the further intent either:
>> **(1)** To jeopardize the health of persons receiving health services within the building; or
>> **(2)** To interfere with the safe and effective delivery of those services within the building.

*Id.* § 4684-B(2). Mr. Khaqan has not alleged the Defendants engaged in any of these actions. The remainder of the provision, section 4684-B(3)-(4), has to do with medical safety zones and is also irrelevant here. Therefore, the first avenue to bring a claim, under section 4682's cross-reference to section 4684, is inapplicable.

The second avenue, self-contained in section 4682, allows a civil action if someone "intentionally interfere[s] or attempt[s] to intentionally interfere with the exercise or enjoyment by any other person" of their constitutionally secured rights by way of five enumerated actions:

(1) Physical force or violence against a person;
(2) Damage or destruction of property or trespass on property;
(3) Threatening physical force or violence against a person;
(4) Threatening damage or destruction of property or trespass on property; or
(5) Engaging in any conduct that would cause a reasonable person to suffer emotional distress or to fear death or bodily injury to that person or to a close relation.

*Id.* § 4682-1A(B).

Mr. Khaqan has not alleged the Defendants engaged in these actions nor provided enough facts to allow for a reasonable inference that they did. Therefore, the second avenue to bring a claim under section 4682 has also not been sufficiently pleaded.

Both sections 4683 and 4685, the remaining provision of the Maine Civil Rights Act, are irrelevant here as the former discusses attorney's fees and costs and the latter designates the short title for these provisions: Maine Civil Rights Act. *Id.* §§ 4683, 4685.

Altogether then, the Court concludes that, as currently alleged, Mr. Khaqan's claim of harassment, including bullying, intimidation, and harassment, does not fit within the statutory limitations of the Maine Civil Rights Act, because Mr. Khaqan has not alleged underlying facts sufficient to fit within the protection of the statute. The Court concludes, therefore, that, as currently drafted, Mr. Khaqan's complaint

38

for harassment under that Act, fails "to state a claim upon which relief can be granted" based on the facts he has alleged.  FED. R. CIV. P. 12(b)(6).

The Court accordingly grants the Defendants' motion to dismiss as to Count VIII (Harassment – Maine Civil Rights Act).

### F.    Punitive Damages (Count IX)

Mr. Khaqan's final count alleges that "[t]he actions of the Defendants', in concert and individually, were done intentionally and with malice toward [him]." *Compl.* ¶ 50.  Therefore, "[i]n addition to all legally compensable damages the Plaintiff requests this Honorable Court to enter an award of punitive damages against all Defendants while acting under authority of law to ensure that this type of racial and ethnic discrimination is not inflicted by the Defendants upon other individuals." *Id.* ¶ 51.

As the Defendants point out, "[u]nder Maine law, punitive damages are not a separate and distinct cause of action.  Rather it is a type of remedy."  *Defs.' Mot.* at 9 (quoting *Sandler v. Calcagni*, 565 F. Supp. 2d 184, 198-99 (D. Me. 2008)).  Given this, the Defendants argue that "[i]f the other counts of the complaint are dismissed, there is no avenue available for an award of punitive damages."  *Id.* (citing *Pan Am. Sys., Inc. v. Hardenberg*, 871 F. Supp. 2d 6, 18 (D. Me. 2012)).

Since punitive damages are not a distinct cause of action, the Court dismisses Count IX (Punitive Damages).  *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 64 (1st Cir. 2000) ("Punitive damages . . . do not constitute a separate cause of action, but instead form a *remedy* available for some tortious or otherwise unlawful

acts") (emphasis in original).  However, as the Court has not dismissed all counts of the complaint and the Defendants make no other claim about the unavailability of punitive damages in this lawsuit, the Court does not reach the appropriateness of punitive damages in this suit.

### G.   Municipal Liability

At this point, the Court has dismissed all but three of Mr. Khaqan's claims: Counts V and VI, violations of his civil rights under 42 U.S.C. § 1983 and the Maine Civil Rights Act (5 M.R.S. § 4682); and Count VII, intentional interference with contractual relations.  The remaining question is whether these claims, insofar as they are brought against the town of Bucksport, should be dismissed.

The Defendants argue that all counts against the Town should be dismissed. *Defs.' Mot.* at 9.  First, they aver that "[i]t is well established that the doctrine of respondeat superior, which imposes vicarious liability on an employer for the torts of an employee undertaken in the course of his or her employment, does not apply to § 1983."  *Id.* (quoting *Ouellette v. Beaupre*, 977 F.3d 127, 140 (1st Cir. 2020)). Defendants also assert that "[a] local government is responsible under section 1983 'when execution of a government's policy or custom . . . may fairly be said to represent official policy . . ..'"  *Id.* at 10 (quoting *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  Given this legal backdrop, the Defendants contend "the complaint makes only the conclusory statement that the conduct of individual defendants was part of a pattern or practice condoned by the Town, but no other light is shed on what that

pattern or practice was." *Id.* Therefore, they continue, "[t]he Court need not accept as true Plaintiff's legal conclusion." *Id.* (citing *Iqbal*, 556 U.S. at 678).

As far as the intentional interference claim, the Defendants argue that even "[a]ssuming, without conceding, that Mr. Chiavelli and the Councilmen did intentionally interfere with Plaintiff's contractual relations, that conduct, as a matter of law, could not have been of the kind that they were employed by the Town to perform." *Id.* Consequently, Defendants insist that "no vicarious liability can attach to the Town on Count VII, and that count should be dismissed as against the Town." *Id.*

In response, Mr. Khaqan includes two block quotes, which the Court understands to be cited for the propositions that 1) even if not explicitly stated, courts should assume that constitutional violation claims brought against municipalities are brought under § 1983, 2) that for purposes of § 1983 claims "a municipality is a 'person' subject to suit," and 3) that "municipalities do not enjoy immunity from suit— either absolute or qualified—under § 1983." *Pl.'s Opp'n* at 8 (quoting *Polk v. Town of Lubec*, 756 A.2d 510, 513 (Me. 2000); *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 166-67 (1993)).

In reply, the Defendants reiterate their position that Mr. Khaqan has "merely made a conclusory allegation" and that the "Court need not accept as true Plaintiff's legal conclusion." *Defs.' Reply* at 4.

Under § 1983 individuals may bring lawsuits against "any person" who, acting under the color of state law, deprived the individual of any right or privilege

guaranteed by federal law. 42 U.S.C. § 1983. Municipalities and local governments are "persons" within the meaning of § 1983. *See Monell*, 436 U.S. at 690; *see also Fincher v. Town of Brookline*, 26 F.4th 479, 485 (1st Cir. 2022).

Therefore, municipalities and local governments "could be liable in certain cases when its agents and employees commit[] constitutional violations." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 25 (1st Cir. 2005). However, municipalities and local governments cannot be held liable under a theory of respondeat superior. *Id.* (citing *Monell*, 436 U.S. at 691-95). "Instead, it is only when the governmental employees' 'execution of a government's policy or custom . . . inflicts the injury' and is the 'moving force' behind the constitutional violation that a municipality can be liable." *Id.* (citing *Monell*, 436 U.S. at 694).

In other words, assessing liability against Bucksport "requires two basic elements: first, that plaintiff's harm was caused by a constitutional violation, and second, that the [Town] be responsible for that violation . . .." *Id.* at 25-26 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)).

Counts V and VI allege and plausibly plead that Mr. Khaqan's "harm was caused by a constitutional violation." *Id.* at 26. In turn, they survive the first element of liability.

As far as the second element, responsibility, the town of Bucksport is only potentially liable "under section 1983 if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation.'" *Haley v. City of Boston*, 657 F.3d 39, 51 (1st Cir. 2011) (quoting *Connick*

*v. Thompson*, 563 U.S. 51, 60 (2011)). More specifically, "it is only when the governmental employees' 'execution of a government's policy or custom inflicts the injury' and is the 'moving force' behind the constitutional violation that a municipality can be [held] liable." *Young*, 404 F.3d at 25 (quoting *Monell*, 436 U.S. at 694).

The question, therefore, is whether Mr. Khaqan has plausibly alleged that the actions of Mr. Chiavelli and the Town Council occurred "pursuant to an official policy or custom." *Welch v. Ciampa*, 542 F.3d 927, 941 (1st Cir. 2008) (citing *Monell*, 436 U.S. at 694). Mr. Khaqan could "establish the existence of an official policy by showing that the alleged constitutional injury was caused by a formal decision of a municipal legislative body, or by a person with final policymaking authority." *Id.* (internal citation omitted) (citing *Owen v. City of Independence*, 445 U.S. 622 (1980); and *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-24 (1988)). Alternatively, Mr. Khaqan could demonstrate that "there was an official Town policy of inadequate training or supervision." *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002).

Mr. Khaqan's allegation of an official policy was merely a legal conclusion and not a factual assertion, so the Court ignored it, as is required to do at the motion to dismiss stage. *See supra* fn. 7 (quoting *Schatz*, 669 F.3d at 55). Therefore, whether Counts V and VI are dismissed with respect to the Town of Bucksport hinges on whether Mr. Khaqan has plausibly alleged that his "alleged constitutional injury was caused . . . by a person with final policymaking authority." *Welch*, 542 F.3d at 941.

Mr. Khaqan's complaint alleges that Mr. Chiavelli 'took it upon himself . . . to do all that was within his power to shut the Fountain Inn down." *Compl.* ¶ 8.  It also alleges that Mr. Chiavelli "made statements to public newspapers . . . that even if an appeal of a determination by the Town Council that the Fountain Inn was a dangerous building were successful, he would go back and condemn the building again." *Id.* ¶ 12.  Taken together, these facts indicate that Mr. Chiavelli, regardless of all his actions, was not the "final policymaking authority"; the Town Council was. Mr. Khaqan does allege that the "Town Council did not provide [him] an opportunity to review the evidence presented by [Mr. Chiavelli] . . . and refused to permit [him] to cross-examine and directly challenge or question [Mr. Chiavelli]." *Id.* ¶ 14.  Taking this fact as true and drawing all reasonable inference in Mr. Khaqan's favor, *see Schatz*, 669 F.3d at 55, the Court concludes it is plausible the Town Council has "final policymaking authority" when it comes to dangerous building designations, therefore the due process violation can be imputed to the Town of Bucksport.

Accordingly, the Court denies Defendants' request that Counts V (Violation of the Federal Civil Rights of the Plaintiff under 42 U.S.C. § 1983) and VI (Violation of the Civil Rights of the Plaintiff under 5 M.R.S. § 4682) be dismissed with respect to the town of Bucksport.

Count VII, intentional interference with contractual relations is a claim under state tort law, not constitutional or federal law.  Therefore, § 1983 does not provide a cause of action for Mr. Khaqan to seek money damages from the town of Bucksport. *See* 42 U.S.C. § 1983; *see also LaForce*, 288 F.3d at 6 ("Section 1983 provides a cause

of action for a plaintiff to seek money damages from a defendant who acted under color of state law to deprive plaintiff *of a right guaranteed by the Constitution or by federal law*" (emphasis supplied)). "[M]unicipal liability under the Maine Civil Rights Act is coterminous with municipal liability under section 1983." *Higgins v. Bubar*, No. 1:11-cv-00148-NT, 2012 U.S. Dist. LEXIS 108054, at *33 (D. Me. Aug. 2, 2012) (citing *Berube v. Conley*, 506 F.3d 79, 84 (1st Cir. 2007); *Forbis v. City of Portland*, 270 F. Supp. 2d 57, 61 (D. Me. 2003)). Thus, the Maine Civil Rights Act also does not provide a cause of action for Mr. Khaqan to seek money damages from the town of Bucksport.

Accordingly, the Court dismisses Count VII (Intentional Interference with Contractual Relations) with respect to the town of Bucksport.

## V.   SUMMARY

As there are multiple defendants and several counts, the Court summarizes its holdings:

The Court grants the Defendants' motion to dismiss Counts I, II, III, IV, VIII, and IX with respect to all Defendants.

The Court denies the Defendants' motion to dismiss Counts V and VI with respect to all Defendants.

The Court grants the Defendants' motion to dismiss Count VII with respect to the town of Bucksport and denies the Defendants' motion to dismiss Count VII with respect to the individual Defendants.

## VI.   CONCLUSION

The Court partially GRANTS and partially DENIES Defendants' Motion to Dismiss (ECF No. 15).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 20th day of February, 2024.